MICHELLE ROBERTS BARTOLIC (SBN: 239092)
Email: mroberts@robertsbartolic.com
**ROBERTS BARTOLIC LLP**
1050 Marina Village Pkwy., Suite 105
Alameda, CA 94501
Telephone: (510) 992-6130
Facsimile: (510) 280-7564

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND/SAN FRANCISCO DIVISION**

| | |
|---|---|
| SARABJIT SANGHA,<br><br>           Plaintiff,<br><br>     vs.<br><br>CIGNA LIFE INSURANCE COMPANY OF NEW YORK,<br><br>           Defendant. | Case No. 4:17-cv-5158<br><br>**COMPLAINT (ERISA)** |

## INTRODUCTION

1.      Plaintiff Sarabjit Sangha ("Plaintiff" or "Ms. Sangha") brings this action for declaratory, injunctive, and monetary relief pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). At issue is Defendant CIGNA Life Insurance Company of New York's ("Cigna") refusal to pay Plaintiff long term disability ("LTD") income benefits as a result of her disability due to severe chronic pain secondary to cervical degenerative disc disease and C4 to C7 spinal fusion surgery. Prior to her disability in May 2012, Ms. Sangha worked successfully as a Buyer/Subcontractor for Loral Space & Communications Inc. ("Loral"), a satellite communications company. Cigna had found Ms. Sangha disabled under the terms of Loral's group LTD policy ("the Plan") and paid her benefits for almost 4 years before it decided Ms. Sangha no longer met the definition of disability and ceased issuing benefits beyond July 31, 2016. Since 2012, Ms. Sangha's condition has not improved to the point of returning her to her former job or any occupation for which she might

otherwise be qualified. However, Cigna, who is responsible for paying and deciding her benefit claim, based its decision to terminate Ms. Sangha on biased and unreliable in-house file reviews. Despite all of Ms. Sangha's treating physicians indicating no improvement in her condition, Cigna still somehow found that she was no longer eligible to receive the benefits that it had previously approved and paid for years. Ms. Sangha seeks a court order requiring Cigna to pay her past-due benefits and to declare her right to future benefits for as long as she remains disabled under the terms of the Plan. She also seeks prejudgment interest and attorneys' fees and costs.

## JURISDICTION

2. This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 28 U.S.C. § 1331.

## VENUE

3. On information and belief, Defendant Cigna Life Insurance Company of New York is a licensed insurance company authorized to transact business in the Northern District of California. At all relevant times, Defendant could be found in the Northern District of California. Defendant delivered the Group Insurance Policy at issue in this case to the Plan sponsor in Palo Alto, California. Defendant is also the claims administrator for the Plan and decides eligibility for benefits under the terms of the Plan.

4. Venue lies in the Northern District of California pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Plaintiff resides in this district, the breaches alleged occurred in this District, and the ERISA-governed plan at issue was administered in part in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## INTRADISTRICT ASSIGNMENT

5. This action arises in Alameda County since Plaintiff resides in, Defendant may be found in, and the employee benefit plan at issue is administered in part in, and some of the breaches alleged occurred in Alameda County. Plaintiff does not oppose assignment to either the Oakland or San Francisco divisions of the United States District Court for the Northern District of California.

## PARTIES

6. Cigna issued a Group Insurance Policy, NYK0960109, effective January 1, 2007, on behalf of Loral Space & Communications Inc. ("the Plan"). The Plan funds the LTD disability benefits provided by Loral to its eligible employees.

7. Cigna is the claims administrator and claims fiduciary for the Policy and makes decisions regarding eligibility for benefits under the terms of the Plan.

8. At all relevant times, Plaintiff was a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan.

9. At all relevant times, the Plan was an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1). At all relevant times, the Plan offered, *inter alia*, LTD benefits to participants, including Plaintiff.

## FACTS

10. Ms. Sangha worked as a Buyer/Subcontractor Administrator for Loral, a leading satellite communication company, beginning August 9, 2010. As a buyer, Ms. Sangha was responsible for establishing supply sources for complex commodities, systems, subsystems, special processes, and services. To that end, she participated in negotiations for supply contracts, prepared complex subcontract specifications, prepared and reviewed analysis for competitive supplier bids, and coordinated the terms and conditions for the procurement of supplies.

11. Unfortunately, after working at Loral for more than a year, Ms. Sangha was involved in a substantial car accident on October 26, 2011. While stopped at a red light, Ms. Sangha was rear-ended by a truck. Her car was completely totaled, and she remembers jerking forward and backwards violently, with possible loss of consciousness. After the impact, Ms. Sangha described a shockwave of numbness throughout her body, followed by 2-3 hours of stuttered speaking and shakiness. Ms. Sangha was taken by ambulance to the emergency room at Washington Hospital in Fremont, California, where she complained of severe neck pain that radiated down to her shoulder and back, as well as migraine headaches.

12. Ms. Sangha was released from the ER and cleared to work part-time for 4 hours per day, while she received physical therapy and chiropractic adjustment for her pain symptoms.

However, on November 18, 2011, Ms. Sangha experienced very severe neck pain and returned to the ER, where the staff doctor diagnosed her with cervical sprain with cervical radiculopathy and prescribed her Valium and Percocet. After this incident, Ms. Sangha started seeing Dr. Surjit Mahal, her primary care physician, regularly. One month later though, Ms. Sangha's neck pain did not improve, and on November 28, 2011, MRI imaging revealed the cause: significant degree of cervical spinal stenosis (narrowing of the spinal canal) at the C4-5, C5-6, and C6-7 vertebrae, with mild nerve compression and mild surrounding stenosis. Additionally, a March 13, 2012 MRI of Ms. Sangha's lumbar spine revealed degenerative changes and mild central canal stenosis in the L4-5 vertebrae. In order to help deal with the constant pain, Ms. Sangha's pain management doctor, Marilee Schuchard, M.D., prescribed muscle relaxants, analgesics, and multiple cervical trigger point injections.

13. By April 18, 2012, Ms. Sangha consulted with Dr. Desmond Erasmus, a board certified neurological surgeon. Dr. Erasmus noted the severity of the cervical stenosis in Ms. Sangha's C4-5, C5-6, and C6-7 levels, and he gave her the option of fusion surgery at the affected levels, which she accepted. Ms. Sangha stopped working completely on May 14, 2012 to prepare for surgery. On May 29, 2012, Ms. Sangha underwent an anterior cervical disc excision at C4-5, C5-6, C6-7; an anterior arthrodesis (fusion) of the interbody at C4-5, C5-6, C6-7; allograft of demineralized bone matrix; and anterior spinal plating from C4 to C7. Ms. Sangha spent the following several months recovering. On September 6, 2012, Dr. Erasmus confirmed total disability with an anticipated work release date of November 1, 2012.

14. From September 2012 to early February 2013, Ms. Sangha continued feeling chronic neck pain with severe radiation into her right shoulder, despite taking pain medication and following up with Dr. Erasmus regularly. On March 18, 2013, Ms. Sangha's voluntary state disability insurance reached the maximum benefits allowed. Unfortunately, her symptoms had not reached maximum medical improvement, and by a note dated April 4, 2013, Dr. Erasmus extended Ms. Sangha's disability through June 1, 2013 pending re-evaluation.

15. Shortly thereafter, Ms. Sangha submitted her claim for LTD benefits to Defendant on April 22, 2013. The Plan contains the following definition of disability:

**Definition of Disability/Disabled**
An Employee will be considered Disabled if, because of Injury or Sickness,
1. He or she is unable ot perform the material duties of his or her regular occupation, and solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings; and
2. After Disability Benefits have been payable for 24 months, he or she is unable to perform the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, and solely due to Injury or Sickness, he or she is unable to earn more than 60% of his or her Indexed Covered Earnings.

By letter dated May 31, 2013, Defendant denied Ms. Sangha's LTD claim, stating that her disability was supported through November 19, 2011 to October 29, 2012 but not beyond that period. Cigna ignored Dr. Erasmus's June 1, 2013 return to work date, and instead found her functionally able to return to work based off a visit note that merely stated her cervical incision wound was well healed.

16. Ms. Sangha and her physicians completely disagreed with this determination, so she submitted an appeal by letter dated July 8, 2013. In support of her appeal, Dr. Schuchard, Dr. Mahal, and Dr. Erasmus each submitted letters supporting Ms. Sangha's continued disability due to significant neck and bilateral arm pain, as well as degenerative changes in her back. Notably, all her doctors concurred Ms. Sangha had now developed depression due to her struggles with chronic pain. They further noted that she had trouble just carrying out her activities of daily living, and would have even more trouble returning to work.

17. In response, Defendant ordered an independent review of the previous denial, and by letter dated October 14, 2013, Defendant notified Ms. Sangha it was overturning the denial and will continue to pay her entitled benefits. Ms. Sangha continued pain management treatment with her doctors for her failed neck surgery and started taking psychotropic medication for her depression as well. Defendant paid Ms. Sangha's benefits for roughly six months, but then on March 14, 2014, it decided she no longer satisfied the definition of disability and terminated her benefits beyond March 17, 2014. Defendant based its decision on a psychological evaluation performed by Robert Avenson, Ph.D. on December 20, 2013, which showed no significant psychiatric conditions. However, Dr. Avenson still opined Ms. Sangha's physical pain symptoms necessitated pain management with opioid medication. Nonetheless, Defendant placed more

weight on the reviews of its in-house physicians, JoAnn Orozco, R.N. and Penny Chong, M.D., who both found no functional loss. Ms. Sangha initiated her appeal on April 11, 2014.

18. Unfortunately, Ms. Sangha's doctor's failed to submit updated records to Defendant, so it upheld its denial of her benefits beyond March 17, 2014. Ms. Sangha apologized for her doctor's non-responsiveness, and she explained that she was scheduled to see new pain management doctors and would submit those records for review. Ms. Sangha initiated her second voluntary appeal for her LTD denial on June 19, 2014.

19. On July 31, 2014, Ms. Sangha started pain management with Dr. Suresh Mahawar, who is board certified in internal medicine, and Dr. Co V. Banh, who is board certified in physical medicine and rehabilitation. Dr. Mahawar continued her Percocet and Gabapentin prescriptions, while Dr. Banh started regular epidural steroid injections into her cervical and lumbar spine. The injections brought her significant lumbar/low back pain relief, but they had little effect on her cervical pain.

20. Defendant started its review of Ms. Sangha's voluntary appeal by ordering medical file reviews from Todd Finnerty, Psy.D., a clinical psychologist, and Dr. Charles Brock, a pain management specialist. Mr. Finnerty found no evidence of psychological impairment, but Dr. Brock noted the record supported Ms. Sangha's persistent pain symptoms and would support restrictions and limitations. Specifically, Dr. Brock restricted Ms. Sangha from performing any extreme right or left cervical bending; any cervical spine rotation; and any lifting, pushing, pulling or carrying anything over 10 pounds. Dr. Brock also supported occasional bending, stooping, crouching, crawling, sitting, standing, and walking. These restrictions would not satisfy the requirements of Ms. Sangha's own light duty occupation, so on October 30, 2014, Cigna's Senior Claim Manager, Ann Aguilar, recommended overturning of Ms. Sangha's denial and reinstatement of benefits.

21. Additionally, Defendant conducted a mortality calculation and found Ms. Sangha to be a suitable candidate for a full settlement of her claim, which meant it acknowledged she would be permanently disabled for the remainder of her life and elected to pay her a reduced lump sum amount. Ms. Sangha declined the settlement offer and chose to receive her full benefit

on a monthly basis instead.

22. On November 18, 2014, the Plan's definition of disability changed from the "own occupation" standard to the "any occupation" standard. Defendant performed a Transferable Skills Analysis with the restrictions and limitations provided by Dr. Brock, but it was unable to find any occupation that could match Ms. Sangha's physical ability or salary level. As such, Ms. Sangha was found totally disabled under the "any occupation" standard, and her benefits would be reinstated.

23. Ms. Sangha continued to see her pain management doctors regularly for epidural steroid injections and trigger point injections to her cervical and lumbar spine. By 2016, Ms. Sangha remained symptomatically the same, if not worse due to new symptoms of occipital headaches, shoulder spasms secondary to neck pain, and more severe lumbar spine pain. Defendant continued to pay Ms. Sangha benefits throughout 2015 and into 2016, but then it started its periodic review of LTD benefit eligibility on January 14, 2016. Ms. Sangha submitted all her medical records to Defendant, and she agreed to attend a Functional Capacity Evaluation ("FCE") arranged by Defendant. On May 12, 2016, Ms. Sangha attended an FCE with Dr. Johnathan Blue, a Doctor of Physical Therapy, and she was subjected to range of motion testing, strength testing, grip testing, and functional work testing. Dr. Blue found many restrictions and limitations, including occasional sitting (< 20 minutes continuously), standing (< 15 min continuously), walking (< 10 min continuously), grasping, fingering, and reaching. Dr. Blue also found that Ms. Sangha could not lift, carry, push or pull more than 5 lbs., and that she should only bend, squat, or reach forward infrequently (<1% of the day). These restrictions preclude sedentary level work, which require constant sitting, and precludes light level work, which requires lifting 20 pounds occasionally or walking and standing to a significant degree.[1]

24. Defendant still denied Ms. Sangha's claim by letter dated June 1, 2016 and terminated her benefits beyond July 31, 2016. In its rationale, Defendant glossed over the FCE, but it did admit Ms. Sangha could only sit occasionally. Contrary to these findings, Defendant's Vocational Rehabilitation Specialist found two jobs—Financial Aid Counselor (DOT Code:

---

[1] Dictionary of Occupational Titles ("DOT") Appendix C. https://occupationalinfo.org/appendxc_1.html.

169.267-018) and Procurement Engineer (DOT Code: 162.157-034)—that Ms. Sangha could allegedly perform.  Both these jobs have a sedentary physical demand level, and there is no evidence Ms. Sangha could tolerate sitting for a full day, when she can barely tolerate sitting for 20 minutes.  Defendant's denial not only contradicts its own FCE evaluator, it also contradicts Defendant's previous decision to offer Ms. Sangha a full settlement of her claim.

25.     Ms. Sangha appealed Defendant's decision.  Although Cigna had already subjected Ms. Sangha to an FCE five months earlier, Defendant scheduled Ms. Sangha for an Independent Medical Examination ("IME").  The FCE was supportive of disability, and Cigna did not articulate a reason why the IME was necessary.  Nonetheless, Ms. Sangha agreed to attend the IME on November 1, 2016.

26.     The Independent Medical Examination performed by Dr. Donald Lee was flawed in a number of ways.  First, Dr. Lee's report is self-contradictory and lacks any reasoning for his conclusions.  Dr. Lee reported Ms. Sangha has the ability to sit, stand, and walk frequently based on chart review, physical exam, and diagnostic studies.  This is a completely unsupported assertion.  Defendant's own FCE doctor did not support Ms. Sangha having the ability to sit, stand, and walk frequently, and there is no diagnostic study that says this either.  As for the physical exam, Dr. Lee presents no findings on physical exam to support his conclusions either.  In fact, according to Ms. Sangha and her spouse, who also attended the IME, Dr. Lee's physical examination only lasted for about 3 minutes.  Dr. Lee merely checked her reflexes, asked her to move her arms up and down, and made her walk back and forth.  Ms. Sangha and her spouse also reported Dr. Lee was very rude and became irritated when either of them tried to clarify Ms. Sangha's symptoms.  On top of all that, Dr. Lee also put little to no effort into his report.  There are numerous typos throughout, and there is even a section where Dr. Lee nonsensically reported, "[Ms. Sangha's] testicles were in scrotum and not high riding."  This was clearly a cut and paste job by Dr. Lee, and nothing Dr. Lee wrote can be considered credible.

27.     Yet, this did not stop Defendant from using Dr. Lee's report to deny Ms. Sangha's appeal by letter dated December 19, 2016.  Defendant's rationale directly quoted Dr. Lee's restrictions and limitations and used them in a Transferable Skills Analysis to find two jobs Ms.

Sangha can allegedly perform. Due to the unreliability of Dr. Lee's IME, the Transferable Skills Analysis should be considered equally invalid. Defendant clearly did not review Dr. Lee's IME report in detail; it was more interested in his conclusion.

28.  Additionally, Defendant's rationale ignored relevant sections of the Social Security Award letter and merely cherry picked sections it found favorable. Defendant acknowledged that the SSA medical reviewer opined Ms. Sangha possessed residual functional capacity to perform sedentary work with additional restrictions. However, Defendant completely ignores the subsequent Vocational Analysis by the SSA vocational expert, who testified that given the claimant's age, education, work experience, and residual functional capacity, "there are no jobs in the national economy that [Ms. Sangha] could perform."  The vocational expert found Ms. Sangha had no transferrable skills at all, which ultimately formed the basis for the SSA's finding of disability, but Defendant failed to take this into consideration. Defendant did not discuss how it found 2 jobs Ms. Sangha could allegedly perform, especially when the SSA's expert, Gerald Belchick, Ph.D., an independent expert with nearly a quarter of a century of experience consulting for the SSA, could not find any. Defendant must take into account experience, training, and education in its disability determinations, but there is no evidence showing it did. Defendant denied Ms. Sangha's appeal after she reimbursed over $60,000 to Cigna from the money that she received retroactively from the SSA for her disability.

29.  Ms. Sangha retained an attorney and submitted a second voluntary appeal on June 14, 2017. Along with her appeal, Ms. Sangha submitted video statements showing her physical ability on a bad day; declarations from friends and family; medical records; treating doctor opinion letters; a new objective Functional Capacity Evaluation with a Job Simulation Assessment, and a fully favorable Social Security Disability Insurance award. Notably, her X-rays and MRI confirmed Ms. Sangha developed an approximately 3 to 4 mm anterior spondylosis (degeneration) of her C7 vertebrae upon the T1 vertebrae, which increased with flexion and raised the possibility of instability. Furthermore, the new objective FCE performed on April 18 and 19, 2017 by the Center for Career Evaluations found Ms. Sangha unable to meet the demands of Sedentary employment, due to her inability to sit for longer than 20 minutes, stand for longer than

6 minutes, and lift more than 5 pounds.  Unlike Dr. Lee's report, the new FCE actually includes objective physical exam measurements to support its findings.  It is also consistent with the FCE Cigna previously obtained.

30. By letter dated August 9, 2017, Defendant again upheld its termination of Ms. Sangha's LTD benefits.  The denial rationale omits the new FCE, and Defendant again relies on in-house medical file reviews for its decision.  This time, however, Defendant's reviewer found no sitting restrictions supported at all, with frequent ability to stand and walk, and Defendant again used those figures to find two sedentary jobs it alleges Ms. Sangha can perform.

31. Throughout her disability, Ms. Sangha has complied with every one of Defendant's demands while struggling to deal with her pain symptoms.  Defendant, on the other hand, has failed to administer Ms. Sangha's claim fairly, and as a result of its ceaseless arbitrary denials, Defendant has inflicted serious financial harm to Ms. Sangha.

32. Plaintiff continues to remain disabled as that term is defined in the Plan and is entitled to LTD benefits.  Cigna refuses to pay those benefits beyond July 31, 2016.

33. Plaintiff has exhausted any and all administrative remedies required before bringing suit.

## COUNT I
### [Claim for Benefits Pursuant to ERISA § 502(a)(1)(B)]

34. Plaintiff incorporates Paragraphs 1 through 33 as though fully set forth herein.

35. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to her under the terms of a plan, to enforce her rights under the terms of a plan, and/or to clarify her rights to future benefits under the terms of a plan.

36. At all relevant times, Plaintiff has been entitled to disability benefits under the Plan.  By denying Plaintiff's claim for disability benefits under the Plan, and by related acts and omissions, Defendant has violated, and continues to violate, the terms of the Plan and Plaintiff's rights thereunder.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant the following relief:

A. Declare that Defendant violated the terms of the Plan by denying Plaintiff's claim

for disability benefits;

      B.     Order Defendant to pay LTD benefits to Plaintiff pursuant to the terms of the Plan through the date judgment is entered herein; together with prejudgment interest on each and every such monthly payment through the date judgment is entered herein;

      C.     Declare Plaintiff's right to reinstatement into the LTD Plan and her right to receive future disability benefit payments under the terms of the Plan for as long as she remains disabled under the Plan's terms;

      D.     Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

      E.     Provide such other relief as the Court deems equitable and just.

Dated: September 6, 2017                        Respectfully submitted,

                                                        ROBERTS BARTOLIC LLP

                                                        /s/ *Michelle Roberts Bartolic*

                                                        Michelle Roberts Bartolic