UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARABJIT SANGHA,<br><br>  Plaintiff,<br><br>  v.<br><br>CIGNA LIFE INSURANCE COMPANY OF NEW YORK,<br><br>  Defendant. | Case No. 17-cv-05158-HSG<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT AND DENYING DEFENDANT'S MOTION FOR JUDGMENT**<br><br>Re: Dkt. Nos. 30, 31 |

On September 6, 2017, Plaintiff Sarabjit Sangha brought suit against Defendant Cigna Life Insurance Company of New York ("CIGNA" or "CLICNY") for declaratory, injunctive, and monetary relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). *See* Dkt. No. 1 ("Compl.") ¶ 1. Specifically, Plaintiff appeals Defendant's denial of her long-term disability ("LTD") benefits relating to "chronic pain secondary to cervical degenerative disc disease and C4 to C7 spinal fusion surgery." *Id.* Currently pending before the Court are the parties' motions for judgment. *See* Dkt. Nos. 30 ("Pl. Mot."), 31 ("Def. Mot"), 34 ("Def. Opp."), 33 ("Pl. Opp."). At a bench trial on June 7, 2018, the parties argued the motions.

The Court has carefully considered the arguments and evidence presented by the parties and, for the reasons set forth below, **OVERTURNS** Defendant's denial of LTD benefits from July 31, 2016. The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a).

**I. FACTUAL BACKGROUND**

Beginning in August 2010, Plaintiff worked as a Buyer/Subcontractor Administrator for Loral Space & Communications Inc. ("Loral"). Compl. ¶¶ 6, 10. Defendant issued a Group

Insurance Policy ("the Policy") on behalf of Loral, which "funds the LTD disability benefits provided by Loral to its employees." *Id.* ¶ 7; *see* Dkt. No. 29 ("AR") at 3487-3509.[1]

### A. The Policy

Defendant is the claims administrator for and Plaintiff participated in the Loral Plan ("the Plan"). Compl. ¶¶ 6-8; Pl. Mot. at 1; *see* 29 U.S.C. § 1002(7). The Policy has an effective date of January 1, 2007. AR 3487. An employee is considered "disabled" under the Policy if:

> [B]ecause of Injury or Sickness,
> 1. he or she is unable to perform the material duties of his or her regular occupation, and solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings; and
> 2. after Disability Benefits have been payable for 24 months, he or she is unable to perform the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, and solely due to Injury or Sickness, he or she is unable to earn more than 60% of his or her Indexed Covered Earnings.

AR 3490, 3493. The Policy states that if an employee becomes disabled while covered, he or she "must satisfy the Benefit Waiting Period and be under the care of a Physician" to receive disability benefits. AR 3490, 3493. In addition, the employee "must provide to the Insurance Company, at his or her expense, satisfactory proof of Disability before benefits will be paid." AR 3490, 3493. Defendant requires "continued proof of the Employee's Disability for benefits to continue." AR 3490, 3493.

### B. Plaintiff's Condition and Defendant's Administration of LTD Benefits

On October 26, 2011, Plaintiff was in her vehicle when it was rear-ended by a heavy-duty truck. AR 1233, 1235, 3366. Following the accident, Plaintiff sought medical treatment for extreme neck pain radiating into her right shoulder. AR 1508. Plaintiff underwent spinal surgery for related injuries on May 29, 2012. AR 1478-1480, 1508. That surgery was performed by neurosurgeon Dr. Desmond Erasmus, M.D. AR 1478-1480. Plaintiff continued to see Dr. Erasmus for post-surgical spine treatments, including x-rays. AR 1484-1485, 1546-1550. Following the surgery, Plaintiff attended additional physical therapy courses, including therapeutic

---

[1] Any citations to the AR will refer to the Bates number, omitting "CLICNY" prefix and preceding zeros.

exercise, modalities, body mechanics, and a home exercise program. Dr. Erasmus placed Plaintiff off work through September 1, 2012. AR 1032-1033. Dr. Erasmus then extended Plaintiff's time off work to January 15, 2013. AR 983. Subsequently, in a progress note dated April 4, 2013, Dr. Erasmus extended Plaintiff's disability through June 1, 2013. AR 1550, 1567-1568. Also in that note, Dr. Erasmus described Plaintiff's pain and generalized fatigue. AR 1550, 1567-1568. Dr. Erasmus opined that Plaintiff should seek treatment for her depression, and receive x-rays of her cervical spine. AR 1550, AR 1567-1568. Given her condition, Dr. Erasmus concluded that Plaintiff was not ready to return to full-time employment. AR 1550, AR 1567-1568.

On April 22, 2013, Plaintiff submitted a claim to Defendant for LTD benefits. AR 1231-1235. On May 31, 2013, Defendant denied Plaintiff's LTD claim, stating that she was entitled to benefits only from November 19, 2011 to October 29, 2012. AR 1561-1564. In denying Plaintiff's benefits, Defendant explained that Plaintiff did not satisfy the Policy's 365-day Benefit Waiting Period. AR 1561-1564. Defendant's denial was based on reviews by Nurse Case Manager Nancy Lescher and Associate Medical Director Dr. Penny Chong, M.D., Board Certified in Internal Medicine. AR 345-348, 337-338. Both of these reviewers found that Plaintiff's limitations and restrictions were not supported. AR 345-348, 337-338.

Plaintiff appealed the denial of benefits on July 8, 2013. AR 1565-1570. As part of her appeal, Plaintiff provided letters of support from her treating physicians, including the progress note signed by Dr. Erasmus on April 4, 2013. AR 1565, 1567-1568. Plaintiff provided an additional letter from Dr. Erasmus dated June 6, 2013. AR 1569. In that note, Dr. Erasmus explained that Plaintiff's "inability to function is related to the need to medicate for chronic pain management." AR 1569. Dr. Erasmus accordingly extended Plaintiff's disability to August 1, 2013. AR 1569.

Dr. Marilee Schuchard also provided Plaintiff with a supporting letter. AR 1566. Plaintiff first saw Dr. Schuchard, a chronic pain management specialist, on March 27, 2012. AR 1646-1648. In a letter dated June 26, 2013, Dr. Schuchard writes that Plaintiff "has been unable to return to work because she is in chronic pain." AR 1566. Dr. Schuchard indicates that she tried to manage Plaintiff's pain "with medications, epidurals, neuropathic medications, [and] physical

3

therapy. . . ." AR 1566. Dr. Schuchard states that Plaintiff had developed a secondary depression because of her chronic pain. AR 1566. Dr. Schuchard writes that she would "appreciate [Plaintiff's] disability to be extended until October 1, 2013." AR 1566. Dr. Schuchard observes that Plaintiff's chronic pain is associated with "degenerative changes in both her neck and her back." AR 1566.

In addition to evaluating Plaintiff's letters of support, Defendant conducted an independent review of Plaintiff's appeal. As part of that process, Defendant provided Plaintiff's medical records to a third-party vendor, MES Solutions. AR 1553-1555. Dr. Mark D. Watson, M.D. Board Certified in Physical Medicine and Rehabilitation, reviewed Plaintiff's treatment history and spoke with Dr. Erasmus. AR 1546-1552. Dr. Watson found that from November 19, 2011 through February 25, 2013, Plaintiff could perform "at less than sedentary work capacity." AR 1552. After that date, however, Dr. Watson opined that Plaintiff could "tolerate occasionally standing and walking up to 3 hours in an 8 hour day," and some bending, squatting, kneeling, crawling and stooping. AR 1552. Dr. Watson found that Plaintiff could sit and use her hands without restrictions. AR 1552.

CIGNA also obtained an occupational analysis from a Rehabilitation Specialist, Melissa Mendez. AR 1543. Ms. Mendez found that the restrictions and limitations provided by Dr. Watson were not consistent with the physical demands of Plaintiff's occupation. AR 1544-1545. Based on these findings, Defendant overturned its previous denial of Plaintiff's disability benefits. AR 1543. Defendant informed Plaintiff of its decision on October 14, 2013. AR 1543.

After Plaintiff's successful appeal, Defendant paid Plaintiff disability benefits for about five months. During this time, Plaintiff continued her treatment and Defendant continued its review of Plaintiff's claim. In November 2013, Plaintiff underwent substantial testing with a physical medicine and rehabilitation specialist, Dr. Tulsidas Gwalani, M.D. AR 1398-1400. Dr. Gwalani diagnosed Plaintiff with failed neck surgery syndrome, right cervical radiculitis, lumbar disc protrusion with facet hypertrophy at L4-L5, L5-S1, right lumbar radiculitis and sciatica, probable opioid dependency, and chronic myofascial pain syndrome. AR 1400. On December 30, 2013, a psychological evaluation was conducted by Dr. Robert Avenson. AR 1434-1439. Dr.

4

Avenson noted that Plaintiff initially appeared "alert, friendly, and cooperative." AR 1434. But after Plaintiff completed the psychological test, Plaintiff "leaned forward with her head in her hands, and her eyes were watering." AR 1434. When Dr. Avenson inquired into Plaintiff's distress, Plaintiff explained that "she was in pain and that her neck was hurting the most." AR 1434. Plaintiff "got up slowly and commented that she felt dizzy for a moment." AR 1434. Plaintiff's reported pain was "extremely high, exceeding those of 98% of chronic pain patients." AR 1437. In his overall impression and recommendation, Dr. Avenson noted that Plaintiff did "not appear to have unreasonable expectations or unrealistic goals for pain management." AR 1439. Those goals were "be pain free, take no medication, and be normal again." AR 1434. In addition, Plaintiff sought to return to work because, in her words: "Being at home drives me crazy." AR 1434. Dr. Avenson found that Plaintiff appeared to be a "good candidate for pain management, including opioid medications." AR 1439.

In addition to Dr. Avenson, Ms. JoAnn Orozco, a Nurse Case Manager, reviewed Plaintiff's updated records. AR 231. Based on her review, Ms. Orozco found that there was an "[o]verall lack of significant physical exam findings to support a functional loss." AR 231. Also, Dr. Chong again reviewed Plaintiff's medical records. Dr. Chong concluded that "[o]ngoing functional loss was not demonstrated." AR 227. Dr. Chong found "no time-concurrent exam notes available for review," and that medication side effects "were not reported or observed." AR 227. After considering the findings of Dr. Avenson, Ms. Orozco, and Dr. Chong, CIGNA notified Plaintiff on March 14, 2014 that it would be unable to continue paying Plaintiff's benefits beyond March 17, 2017. AR 518.

Plaintiff initiated another appeal in April 2014, and submitted updated medical records. AR 525-526. Plaintiff's medical records included treatment visits with Dr. Suresh Mahawar, M.D., a physical medicine and rehabilitation specialist. *See* AR 3223-3224. Plaintiff first saw Dr. Mahawar on June 6, 2014, presenting right-side body pain and chronic pain. AR 2693, 1288-1291. Dr. Mahawar diagnosed Plaintiff with displacement of cervical intervertebral disc without myelopathy. AR 1291. Dr. Mahawar referred Plaintiff for cervical and lumbar epidural injections. Due to Plaintiff's pain, Dr. Mahawar "recommended restrictions of no sitting for more

than 1 hour without break of 15 minutes, no repetitive use of her hands and fingers, and no lifting more than 5 pounds occasionally." AR 1291. Dr. Mahawar also completed a "Physical Ability Assessment," ("PAA") dated July 8, 2014. AR 1272-1276. In his PAA, Dr. Mahawar specified Plaintiff's durational capacity for certain activities in an 8-hour work day. AR 1272-1276. Specifically, Dr. Mahawar indicated that Plaintiff could stand, walk, reach, and lift, carry, push or pull an object only "occasionally," that is, for 0 to 2.5 hours per day. AR 1272. Dr. Mahawar found that Plaintiff could return to "sedentary work only" on July 15, 2014 with specific restrictions including no lifting more than 10 pounds occasionally, and minimal twisting. AR 1274, 1276.

To review Plaintiff's records, including Dr. Mahawar's findings, CIGNA retained Dr. Charles Brock, M.D. Dr. Brock evaluated Plaintiff's treatment records from Drs. Mahawar, Gwalani, Avenson, Erasmus, and Singh (Plaintiff's neurologist in May 2012). AR 3224-3227. Based on this medical documentation, Dr. Brock concluded:

> The available medical records for the time period 03/17/14 forward indicates persistent pain and would support restrictions/limitations with a loss of range of motion associated with the surgery. Mrs. Sangha otherwise does not demonstrate any focal neurologic disturbance in regards to motor, sensory, reflex or cranial nerve evaluation. Due to the reported multilevel fusion, Mrs. Sangha would be restricted from any extremes of right or left cervical side bending or rotation of the cervical spine. Mrs. Sangha would be recommended to not lift, push, pull or carry anything over 10 pounds on an occasional basis due to the noted cervical surgery multilevel and the effect on structural integrity from a multilevel fusion. Mrs. Sangha otherwise is able to grasp, grip and manipulate as needed. The available medical records otherwise would support the ability to occasionally bend, stoop, crouch or crawl the ability to sit and occasionally stand or walk in my medical opinion.

AR 3228. Based in part on Dr. Brock's review, CIGNA overturned its prior denial of Plaintiff's LTD benefits under the "any occupation" standard. AR 509-510; Def. Mot. at 9.

Following reinstatement of Plaintiff's LTD benefits, Plaintiff continued her pain management treatment plan, including epidural steroid injections, trigger point injections, and pain medications prescribed by Dr. Mahawar. AR 1742-1743, 1750-1752, 1760, 1768, 1777, 1785. Plaintiff's chief complaints during this period were chronic neck pain, lower back pain, and pain in her right should and arms. AR 1742-1743, 1750-1752, 1760, 1768, 1777, 1785.

6

On January 24, 2016, Defendant again reviewed Plaintiff's LTD benefit eligibility. Plaintiff submitted her medical records, and underwent a Functional Capacity Evaluation ("FCE") arranged by Defendant. Def. Mot. at 9. The FCE was performed by Jonathan Blue, DPT, on May 12, 0216. AR 1823-1836 ("the Blue FCE"). Mr. Blue found that Plaintiff "was limited in her ability to tolerate maintaining static positions for prolonged periods of time throughout the test." AR 1826. Mr. Blue found that Plaintiff could continuously sit for 20 minutes and stand for 15 minutes "before pain increased in her lower back and neck, necessitating a change in position." AR 1826. Mr. Blue observed that Plaintiff had an "abnormal gait pattern with gait deviations" as a result of increased pain in her lower back. AR 1826. Mr. Blue noted that Plaintiff "demonstrated limitations when attempting to participate in activities involving bending and squatting due to pain in her lower back." AR 1826. Mr. Blue concluded that Plaintiff could "tolerate sitting, standing, and walking on an 'occasional' basis with sitting limited to less than 20 min continuously, standing limited to less than 15 min continuously, and walking limited to less than 10 minutes continuously at this time." AR 1826. Mr. Blue opined that Plaintiff "should limit bending and squatting to an 'infrequent' basis." AR 1826. For purposes of the FCE, "occasional" is defined as 0 to 33% of an 8-hour workday (that is, 0 to approximately 2.5 hours), and "infrequent" is defined as less than 1% of an 8-hour work day. AR 1825, 1837.

Based on the limitations and restrictions set forth in the Blue FCE, Randy Norris, MS, CRC, CCM, conducted a Transferable Skills Assessment ("TSA") dated May 17, 2016. AR 1820-1821. Mr. Norris found that the following two occupations in the Fremont, California labor market satisfied Plaintiff's restrictions and the Policy's wage requirement: (1) Financial-Aid Counselor, and (2) Procurement Engineer. AR 1820-1821. Following the Blue FCE and Mr. Norris's TSA, Defendant denied Plaintiff's LTD benefits. Def. Mot. 10. Though Defendant communicated its decision on June 1, 2016, Defendant continued to pay Plaintiff "any occupation" benefits through July 31, 2016 to prevent potential "financial hardship." AR 435-438.

Plaintiff appealed and submitted updated medical records. Def. Mot. at 10-11. In reviewing Plaintiff's appeal, Defendant requested that Plaintiff undergo an Independent Medical Examination ("IME") through a third-party vendor. AR 2374-2375. The IME was conducted by

7

Dr. Donald Lee, Board Certified in Occupational Medicine and a Qualified Medical Examiner, on November 1, 2016. AR 2324-2359. Dr. Lee opined that the findings in the Blue FCE were consistent with his conclusions. AR 2346. With respect to Plaintiff's restrictions and limitations, Dr. Lee stated:

> In an 8-hour day, the claimant has ability to sit, stand, and walk frequently; the claimant has ability to reach overhead, reach at desk level, and below waist frequently; the claimant has ability with fine manipulation right left, simple grasp right left, and firm grasp right left frequently; the claimant has ability to climb regular stairs/regular ladders, balancing, stooping, kneeling, crouching, and crawling occasionally; the claimant has ability to lift or carry 10 lb occasionally; the claimant has ability with pushing or pulling max of 10 lb occasionally. She has ability with seeing or hearing constantly; and uses lower extremities for foot controls occasionally.

AR 2345. Considering these restrictions and limitations, Cindy A. Herzog, MS, CRC, a Rehabilitation Specialist, performed another TSA on November 18, 2016. AR 2319-2320. Ms. Herzog found that Plaintiff could perform two occupations in the labor market of Fremont, California based on a yearly wage requirement of $46,916.04: (1) Purchase-Price Analyst, and (2) Repair-Order Clerk. AR 2319-2320.

Based on Dr. Lee's IME and Ms. Herzog's TSA, Defendant denied Plaintiff's appeal in a letter dated December 19, 2016. AR 417-421. Plaintiff submitted a secondary voluntary appeal on June 14, 2017. AR 3170-3202. As part of Plaintiff's secondary appeal, Plaintiff provided video statements from her and her partner, declarations from friends, colleagues, and family members, medical records, treating doctor opinion letters, and a Social Security Disability benefits award in support of her claim. AR 3170. In addition, Plaintiff provided reports from a two-day FCE and Job Simulation Assessment ("JSA") performed by Ms. Diana Bubanja, DPT, and Ms. Jill Peterson on April 18 and 19, 2017. AR 2988-2990.

Despite this evidence, Defendant upheld its termination of Plaintiff's LTD benefits on August 9, 2017. Defendant's denial of Plaintiff's secondary appeal was based in part on independent medical reviews conducted in July 2017 by Dr. Louise Banks, M.D., Board Certified in Occupational Medicine and Internal Medicine, and Dr. Laila Laitman, Board Certified in Psychiatry. *See* AR 3074-3099, 3101-3126. Considering the restrictions and limitations set forth by Dr. Banks, Tony Miller, MS, CRC, identified two occupations meeting the Plan's wage

8

1  requirement in the Fremont labor market: (1) Expediter, and (2) Administrative Assistant. AR

2  3070-3071. Plaintiff brought suit approximately one month after Defendant's decision to uphold

3  its termination of Plaintiff's benefits.

**II.  LEGAL STANDARD**

ERISA provides claimants with a federal cause of action to recover benefits due under an ERISA plan. 29 U.S.C. § 1132(a)(1)(B). The parties agree that the Court should apply a de novo standard to evaluate Defendant's denial of LTD benefits under the Plan. *See* Dkt. No. 20 ("Joint Statement") at 3. In applying the de novo standard, the Court "does not give deference to the claim administrator's decision, but rather determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan." *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1295-96 (9th Cir. 2010). "That benefits had previously been awarded and paid may be evidence relevant to the issue of whether the claimant was disabled and entitled to benefits at a later date," but that fact itself does not shift the burden of proof from the claimant. *Id.* at 1296.

**III.  DISCUSSION**

Plaintiff must show by a preponderance of evidence that she is entitled to LTD benefits under the Policy from July 31, 2016 to the present. *See* Def. Mot. at 1; Pl. Mot at 4. According to the Policy, Plaintiff is disabled if she is "unable to perform the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience," and if "solely due to Injury or Sickness. . . she is unable to earn more than 60% of . . . her Indexed Covered Earnings." AR 3490, 3493. As of July 31, 2016, 60% of Plaintiff's Indexed Covered Earnings equaled $47,000 a year, or $3,909 a month. *See* Pl. Mot. at 4; AR 2319. To show that she satisfies that definition of disability, Plaintiff relies on: (1) her medical and treatment records; (2) findings from CIGNA's independent review; (3) an award of Social Security Disability benefits; and (4) her own report and the reports of third-party witnesses detailing her chronic and debilitating pain. Pl. Mot. at 4.

**A.  Plaintiff's Medical and Treatment Records**

Plaintiff argues that her medical and treatment records show that she continues to suffer

from debilitating and chronic pain associated with significant cervical and lumbar degenerative disc disease dating to 2012. *See id.* Plaintiff contends that as a consequence of her pain, she must take narcotics that have independently disabling side effects. *Id.* According to Plaintiff, the combination of these ailments precludes her from performing any occupation that would pay her $47,000 per year. *See id.*

Plaintiff's medical records support a finding of disability under the Plan. Having seen Plaintiff on a near-monthly basis since June 6, 2014, Dr. Mahawar consistently states that Plaintiff's pain requires "[w]ork restrictions of no sitting for more than 1 hour without break of 15 minutes, no repetitive use of her hands and fingers, and no lifting more than 5 pounds occasionally." AR 2693, 2579-2594. Following the operative July 2016 date, Dr. Mahawar's treatment records support that Plaintiff continues to experience debilitating cervical and spinal pain justifying these restrictions. AR 2579-2594 (providing treatment reports from November 7, 2016 through April 5, 2017). For instance, in April 26, 2017, Dr. Mahawar submitted a Physical Residual Functional Capacity Questionnaire in which he reiterates that Plaintiff suffers from cervical and lumbar radiculopathy. AR 2693-2694. He explains that Plaintiff's prognosis is "guarded," and that she is not a malingerer. AR 2693-2694. Dr. Mahawar opines that Plaintiff is "incapable of even 'low stress' jobs." AR 2694. Consistent with his prior observations, Dr. Mahawar sets forth that Plaintiff: (1) can only sit or stand for 15 minutes before needing to change position; (2) can sit or stand for less than 2 hours in an 8-hour working day; (3) needs a job that permits her to shift positions at will and to take unscheduled breaks; (4) can "rarely" lift and carry less than 10 pounds, and can never lift or carry more than that; (5) can only use her hands/fingers/arms for 10% of an 8-hour working day; and (6) needs to be absent from any occupation for more than 4 days per month. AR 2693-2696.

Dr. Erasmus's findings from 2016 corroborate the continuing and degenerative nature of Plaintiff's condition. In addition to the treatment records detailed above, Dr. Erasmus's January 11, 2016 progress note describes Plaintiff's "more prominent" and "increasingly severe" cervical pain. AR 1995. After reviewing several of Plaintiff's x-rays, Dr. Erasmus opines that Plaintiff "demonstrates a very mature fusion from C4-C7. Flexion and extension films demonstrate

anterolisthesis of C7 on T1 that corrects to some extent on extension." AR 1995. Based on his observations, Dr. Erasmus encouraged Plaintiff to continue trigger point and epidural injections as needed. AR 1995. The record shows that Plaintiff consistently sought such treatments.

In a report dated November 23, 2016, Dr. Erasmus details a "degeneration of [Plaintiff's] C3-4 disc with an anterior osteophyte developing." AR 2659. Dr. Erasmus makes the following qualitative observations regarding Plaintiff's spinal and cervical degeneration:

> Over the last year [Plaintiff] has continued to remain in chronic pain management and continues to see a psychiatrist for management of depression. She reports continued fatigue with exacerbation of neck pain . . . . This pain tends to develop with flexion and extension movements of the cervical spine and activities of daily living. . . . In addition to her neck[,] [s]he has low back pain with radiation to the gluteal area bilaterally. MRI studies have shown early disc degeneration without evidence of protrusion. She has also had an MRI study of the brain. This study showed small white matter lesions bilaterally. She tends to be forgetful and has to 'write everything down.'

AR 2659. These findings support Plaintiff's claim that her cervical and spinal pain is disabling, and worsening over time.

In response, Defendant argues that the restrictions and limitations set forth by Drs. Mahawar and Erasmus are consistent with sedentary capacity. Def. Opp. at 2-4. That argument is unpersuasive, in part because Defendant selectively quotes baseline physical exam findings from Plaintiff's records. In doing so, Defendant omits Drs. Mahawar and Erasmus's detailed observations regarding Plaintiff's cervical and spinal pain. For instance, Defendant highlights Dr. Mahawar's observation that Plaintiff presented with a normal gait at one visit. *See* Def. Opp. at 3; *see, e.g.*, AR 2577-2579. But Defendant neglects Dr. Mahawar's contemporaneous description of Plaintiff's strict sitting and standing limitations based on her chronic pain. *See* AR 2577-2579. Defendant likewise overlooks Dr. Mahawar's statements that Plaintiff experiences "pain with range of motion of right shoulder," and "pain with range of motion of cervical spine." AR 2578.

In presenting a June 2016 PAA submitted by Dr. Mahawar, Defendant emphasizes a finding that Plaintiff can "occasionally" grasp with her right hand, stand, walk, or reach. AR 2382. But Defendant elides that "occasionally" is measured by Plaintiff's capacity to perform those tasks for a time period of between 0 to 2.5 hours in an 8-hour work day. AR 2382.

Defendant is correct that Dr. Mahawar checked a box on the June 2016 PAA indicating that Plaintiff can "frequently" sit; that is, she can sit for 2.5-5.5 hours throughout the day. AR 2382. At oral argument, Defendant acknowledged the wide range of sitting capacity that falls within this range. The Court is persuaded that Plaintiff's sitting capacity falls in the lower half of this spectrum, considering: (1) Dr. Mahawar's consistent prior finding that Plaintiff could not sit for more than 1 hour without a break of 15 minutes; and (2) his subsequent opinion that Plaintiff could only "sit or stand for less than 2 hours in an 8-hour working day." *See* AR 2693, 2579-2594, 2693-2696. Independent of Plaintiff's sitting capacity, Plaintiff's severely restricted use of her hands, and her inability to perform repetitive movements, supports her claim to disability. *See, e.g.*, AR 2386.

Defendant emphasizes that components of Dr. Erasmus's November 2016 report are based on Plaintiff's subjective complaints. *See* Def. Opp. at 13, 15-16. But Dr. Erasmus's independent evaluation of Plaintiff, including his reviews of her MRIs, corroborates Plaintiff's account of her pain. *See Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 905-06 (9th Cir. 2016) (finding that the administrator abused its discretion by denying LTD benefits where the plaintiff took narcotics to manage his pain, those narcotics had known side effects, and the plaintiff's subjective complaints were corroborated by the plaintiff's treating physicians); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("[S]ubjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence. . . ."). Irrespective of corroboration, the consistency and severity of Plaintiff's complaints and her pursuit of medical treatment over time support her claim of disability. *See Salomaa v. Honda Long Term Disability Plan,* 642 F.3d 666, 677-6778 (9th Cir. 2011) (finding that court's should credit a claimant's credible self-report of symptoms); *see also Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 646 (7th Cir. 2007) (finding that the plaintiff's "long series of complaints" and "repeated attempts to seek treatment for his condition" supported "an inference that his pain, though hard to explain by reference to physical symptoms, was disabling").

Arguing that Plaintiff's conditions are not continuous, Defendant cites to Plaintiff's 2016 and 2017 visits with various other medical professionals (including internists and cardiologists).

*See* Def. Opp. at 3-4. Defendant's reliance on these extraneous records is unpersuasive: these records pertain to unrelated and routine medical issues, and do not contravene Plaintiff's claim of chronic pain. To the extent that these records bear on the disability inquiry, they support that Plaintiff had long-standing "<u>active</u> non-hospital problems," including "chronic low back pain," "chronic neck pain," "depression" and "spinal stenosis in cervical region." *See, e.g.*, AR 2811 (an internal medicine progress note from Plaintiff's April 28, 2017 visit with Dr. Guatam Pareek, M.D., internal medicine) (emphasis added); AR 2818 (record from Plaintiff's visit with Dr. Pradeep Kumar, M.D., cardiology, noting that Plaintiff was admitted to hospital with heart palpitations possibly related to anxiety).

Though not required, Plaintiff's April 2017 FCE/JSA provides objective evidence of disability under the Policy. *See Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 764 (7th Cir. 2010) (observing that an FCE can, depending on the circumstances, provide an objective measurement of a plaintiff's physical limitations); AR 2975. Based on Plaintiff's performance during this two-day examination, Ms. Bubanja opined that, despite providing full physical effort, Plaintiff:

> [D]oes not meet the physical demand requirements for Sedentary employment as defined by U.S. Department of Labor. Limitations for a full range of Sedentary employment relate to Ms. Sangha's inability to sit for longer than 20 minutes without physical discomfort or compromised mechanics or stand longer than 5-6 minutes without physical discomfort or compromised mechanics, and inability to safely lift or carry weights weighing more than 5 pounds. At the present time, her essential inability to perform long term sitting, standing or walking and her requirement for multiple breaks limits her ability to maintain a consistent work schedule, appropriate pace and persistence during task performance, and required physical and mental stamina in the workplace.

AR 2975.

Ms. Peterson found similarly based on Plaintiff's JSA. *See* AR 2980. The JSA included a vocational interview, Office Proficiency Assessment and Certification typing tests, and other common office task tests. *See* AR 2977-2981. Plaintiff scored within the following percentiles for each of these tests: 17th percentile for spatial reasoning, verbal reasoning, word knowledge and manual speed/dexterity; 32nd percentile for perceptual speed/accuracy and numerical aptitude; and 50th percentile for mechanical reasoning and language usage. AR 2980. Ms. Peterson

13

observed that Plaintiff took multiple unscheduled breaks during the examination, laid down for the lunch break, and reported pain and difficulty concentrating throughout the test. *See* AR 2977-2981. Based on her observations and Plaintiff's test scores, Ms. Peterson concluded that Plaintiff did "not presently exhibit the physical capacities and general stamina to perform her usual and customary occupation as a Buyer/Subcontractor Administrator or any other occupation in the labor market that relates to her training, education, experience, physical, and mental capacity on a full-time basis." AR 2984.

In response, Defendant asserts that Plaintiff's two day FCE/JSA is unreliable because it is based on Plaintiff's self-reports, and contradicted by time-concurrent records. Def. Opp. at 12. That argument is unpersuasive for two reasons. First, the FCE contains numerous objective measurements of functional capacity. *See* AR 2962-2973. Second, for the reasons discussed, Defendant's presentation of Plaintiff's medical records lacks credibility. *See, e.g.*, AR 2705-2709. The consistency and severity of these reports, in addition to Plaintiff's April 2017 FCE/JSA, favor a finding of disability under the Policy.

**B. CIGNA's Review**

In addition to her medical and treatment records, Plaintiff argues that CIGNA's independent review supports her claim to LTD benefits. Both sides highlight the Blue FCE, Dr. Lee's IME, Defendant's TSAs, and Defendant's other independent reviews as significant in Defendant's denial of Plaintiff's benefits beyond July 31, 2016.

CIGNA's evidence does not undermine Plaintiff's claim to LTD benefits. Contrary to his assertion that Plaintiff can work an 8-hour day subject to certain restrictions, the findings and restrictions that Mr. Blue actually sets forth practically preclude finding employment in an occupation meeting the wage requirement. *See* Pl. Mot. at 16. For instance, Mr. Blue found that Plaintiff "was limited in her ability to tolerate maintaining static positions for prolonged periods of time throughout the test." AR 1826. Due to lower back and neck pain, Mr. Blue found that Plaintiff should sit, stand, or walk only "on an 'occasional' basis with sitting limited to less than 20 min continuously, standing limited to less than 15 min continuously, and walking limited to less than 10 minutes continuously at this time." AR 1826. "Occasional" is defined as anywhere

between 0 to 2.5 hours of an 8-hour workday. *See* AR 1825-1826, 1837. An employee who cannot sit for more than four hours out of an eight-hour work day cannot perform "sedentary" work that involves sitting most of the time. *Armani v. Nw. Mut. Life Ins. Co.,* 840 F.3d 1159, 1163 (9th Cir. 2016). Even if Plaintiff could sit for longer periods, her less-than sedentary capacity is supported by other restrictions and limitations—including her limited ability to stand, carry, and use her hands—presented in her own medical records, the Blue FCE, and Plaintiff's two-day FCE/JSA. Considering the Blue FCE's deficits, and that it forms the basis for Defendant's May 2016 TSA, that TSA is entitled to little weight.

Here too, Plaintiff's April 2017 JSA/FCE is compelling. That FCE accounts for and explains Mr. Blue's contrary conclusion regarding Plaintiff's capacity for sedentary work. In her report, Ms. Bubanja observes that, as compared to the "stand alone" Blue FCE, the "two day JSA and FCE allow[s] for the evaluation of repetitious work activities, which led to improved reliability and measurement of functional capacity in the context of full-time employment." AR 2975. As a result, the two-day FCE/JSA takes into "consideration Ms. Sangha's pain behaviors, unscheduled breaks, compromised body mechanics," and gives "meaning to the functional data, which was not contained in the FCE report dated 05/12/16." AR 2975. Defendant does not dispute or otherwise respond to this comparative evidence. *See* Def. Opp. at 12-13.

Dr. Lee's November 1, 2016 IME suffers from similar methodological deficits and inconsistencies. In summary, Dr. Lee found that Plaintiff could sit, stand, and walk between 2.5 and 5.5 hours per day. Def. Opp. at 11; AR 2345. Defendant does not dispute that Dr. Lee spent just three minutes physically examining Plaintiff. *See* AR 3196-3197; Def. Opp. at 10-11. Dr. Lee's findings are also inconsistent with the observations of Plaintiff's treating physicians, none of whom opined that she can stand or walk for that period of time. Notably, Dr. Lee's findings are inconsistent with the Blue FCE, which found that Plaintiff can only <u>occasionally</u> sit, stand, or walk; that is, perform those tasks for 0 to 2.5 hours. AR 3196. Finally, Dr. Lee's report contains obvious internal errors that cast doubt on its credibility. *See* AR 3198, 2341 (discussing a testicle examination that did not occur); Pl. Mot. at 17. Because Ms. Herzog's November 2016 TSA is based on Dr. Lee's IME, that TSA likewise lacks credibility. *See* AR 2319-2320.

15

Defendant also relies on Dr. Banks's medical review and its attendant TSA. *See* Def. Mot. at 19. In a report dated July 27, 2017, Dr. Banks found that Plaintiff could sit without restrictions, frequently stand and walk during an 8-hour day, lift 10 pounds occasionally, and use her fingers and grasp without restriction. AR 3098. Dr. Banks accordingly concluded that Plaintiff could return to work with those restrictions.

Like Dr. Lee's IME, Dr. Banks's report contains several methodological flaws. First, Dr. Banks entirely fails to explain the bases for the above stated restrictions, despite summarizing Plaintiff's medical records. Second, to the extent that Dr. Banks makes any actual findings, Dr. Banks's qualitative impressions support Plaintiff's disability claim. In response to the question, is Plaintiff "physically functionally limited from 7/31/2016 and continuing," Dr. Banks states, in pertinent part: "Yes, Ms. Sangha is physically functionally limited by her cervical and lumbar degenerative disease, particularly the former. Claimant has a well-documented history of cervical degenerative disease and is status post C4 to C7 fusion." AR 3098. In addition, Dr. Banks expressly <u>contradicts</u> Dr. Lee's overall impressions as set forth in the IME. AR 3099. Dr. Banks states that Dr. Lee's IME did not provide "an adequate representation of Ms. Sangha's functioning, as she has difficulty with repetitive tasks and especially with repetitive hand motions, neither of which is well-defined during IMEs." AR 3099.

In a footnote, Defendant's motion references unfavorable "surveillance" of Plaintiff, and Defendant stressed this point at oral argument. *See* Def. Mot. at 6 n.4 (describing video of Plaintiff "engaged in activities in a fluid and unrestricted manner, including walking, entering and exiting [sic] a vehicle, and driving."). The existence of this surveillance does not contradict the above discussed restrictions and limitations that render Plaintiff disabled under the Policy. *See King v. Cigna Corp.*, No. C 06-7025 CW, 2007 WL 2288117, at *11 (N.D. Cal. Aug. 7, 2007) ("That Plaintiff is able to bend to put her walker in her car, to run errands or to stay at a restaurant for an hour does not establish that she is able to work an eight-hour-a-day job, especially one that requires her to spend most of her day sitting."); *Brown v. Hartford Life & Acc. Ins. Co.*, No. C-03-02466RMW, 2004 WL 2254550, at *5 (N.D. Cal. Oct. 5, 2004) (finding that a sixty-minute video showing the plaintiff "driving, attending church, lifting groceries into her truck, and taking an

16

extended walk wearing women's shoes (low-heeled pumps)" did not support the plaintiff's ability to perform "sedentary jobs," in part because the plaintiff's disability "exist[ed] in her arms"). Considering the reports of Plaintiff's own physicians and the reviews obtained by Defendant, the preponderance of the medical evidence lodged in the record supports Plaintiff's claim to LTD benefits.

### C. Plaintiff's Social Security Disability Determination

Though not binding on the Court, the Court can consider Plaintiff's award of Social Security Disability benefits for its persuasive value. *See Schramm v. CNA Fin. Corp. Insured Grp. Ben. Program*, 718 F. Supp. 2d 1151, 1165 (N.D. Cal. 2010) (considering an extrinsic award of Social Security Disability Insurance benefits); *Oldoerp v. Wells Fargo & Company Long Term Disability Plan*, No. C 08-05278 RS, 2013 WL 6000587, at *3 (N.D. Cal. Nov. 12, 2013) (same). Here, the Administrative Law Judge ("ALJ") found that Plaintiff was disabled from May 14, 2014 through the date of its decision, rendered November 17, 2016. *See* AR 3302. The Social Security Administration ("SSA") defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.*

In short, the ALJ awarded benefits based on a finding that Plaintiff's allegations were "consistent with the medical evidence of record, which corroborates her allegations of disabling neck and back pain and significantly reduced right handed dexterity." AR 3305. Though the ALJ states that Plaintiff was capable of "performing sedentary work" with certain limitations,[2] some of which contradict the findings of Plaintiff's physicians, the ALJ's findings on balance support Plaintiff's claim to LTD benefits under the Policy. Significantly, the ALJ assigned the "most weight" to the opinions of Dr. Omar Bayne, M.D., who performed an orthopedic consultative

---

[2] With respect to Plaintiff's limitations, the ALJ found that Plaintiff can "lift and carry 10 pounds occasionally and frequently; stand and/or walk for two hours in an eight hour day; sit six hours in an eight hour day;" "occasionally reach, handle, finger, and feel with the right upper extremity, frequently climb ramps and stairs; never climb ladders, ropes, and scaffolds, occasionally stoop, kneel, and crawl; [and] frequently crouch." AR 3304.

17

examination of Plaintiff. AR 3305-3306. Based on that examination, Dr. Bayne found that Plaintiff had "less than sedentary residual functional capacity." AR 3306. Dr. Bayne opined that Plaintiff: (1) "ambulated with a significant antalgic gait," (2) "could get up from sitting only with loss of normal spinal rhythm," and (3) had decreased lumbar and cervical range of motion and reduced strength in her right shoulder, grip, and pinch. AR 3306.

In addition to Dr. Bayne's finding of less-than-sedentary capacity, the ALJ assigned "significant" weight to the "less than sedentary treating source statement" supplied by Dr. Mahawar. AR 3306. That statement accords with Dr. Mahawar's historical observations of Plaintiff. Finally, the ALJ accepted the testimony of Dr. Gerald Belchick, Ph.D., the SSA's vocational expert. AR 3306. That testimony included Dr. Belchick's opinion that Plaintiff was precluded from "all work." AR 3306. Dr. Belchick opined that there were "no jobs in the national economy" that Plaintiff could perform considering her age, education, work experience, and residual functional capacity. AR 2293. Accepting Dr. Belchick's testimony, the ALJ stated that Plaintiff possessed "no transferable skills." AR 3307.

### D. Plaintiff's Self-Report and Reports of Third-Party Witnesses

Plaintiff's own statement and the statement of third-party witnesses support a finding of disability under the Policy. Plaintiff's son, daughter, cousin, co-worker, and aunt describe Plaintiff's debilitating chronic pain, the incapacitating side-effects of her medications, and the impact of these ailments on their lives. *See* AR 3369-3377. These statements support Plaintiff's claim that her accident fundamentally altered her personality, restricted her ability to function, and negatively impacted her quality of life. *See id.* Plaintiff and her partner provide video statements recorded in February 2017 that document Plaintiff's severe pain and its side effects. See Dkt. No. 30-1("Roberts Decl."), Exh. 12. Defendant does not dispute the substance of Plaintiff's self-reports; rather, Defendant asserts that these reports are self-serving and not corroborated. *See* Def. Opp. at 15-16. For the reasons discussed, Plaintiff's descriptions of her pain and incapacity are credible and consistent with the findings of Plaintiff's treating physicians and her medical records. Considering this evidence, the Court concludes that Plaintiff meets her burden to show disability under the Policy from July 31, 2016.

18

### E. Attorney's Fees and Costs

In her motion, Plaintiff requests attorney's fees and costs. Pl. Mot. at 25. "ERISA provides that 'the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.'" *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984) (citing § 502(g)(1), 29 U.S.C. § 1132(g)(1)). The Ninth Circuit has held that "absent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant." *Id.* at 590.

However, Defendant did not brief the issue of attorney's fees and costs in its filings. Accordingly, the Court reserves its ruling on fees and costs until the issue has been fully briefed. Plaintiff may file an appropriate motion for attorney's fees under Civil Local Rule 54-5 within 14 days of the entry of judgment.

## IV. CONCLUSION

The Court hereby **OVERTURNS** Defendant's denial of benefits and finds in favor of Plaintiff on her claim for LTD benefits after July 31, 2016. Within 30 days of the date of this Order, the parties shall (1) meet and confer to resolve the amount of disability benefits and prejudgment interest due to Plaintiff based on the findings and conclusion of this Order and (2) submit a proposed judgment consistent with this Order.

**IT IS SO ORDERED.**

Dated: 6/18/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge